## J. J. Settegast v. I. Kapner.

Decided November 18, 1907.

**Surface Water—Obstructing Flow—Evidence.**

In a suit against an adjacent property owner for damages alleged to have been caused by obstructing the flow of surface water and thus flooding plaintiff's lot, evidence considered, and held not sufficient to support a verdict against the defendant.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Stewart, Stewart & Lockett,* for appellant.—The court erred in not peremptorily instructing the jury to return a verdict for defendant, because the uncontradicted evidence showed that the injury, if any, to plaintiff's land was caused by surface water not escaping therefrom, for which this defendant was not liable. Barnett v. Matagorda Rice Co., 98 Texas, 357.

Rain water running through a short gully two or three blocks or five or six hundred feet in length is surface water, where such gully has no spring or other permanent source of supply and is dry the greater portion of the year, and contains no water of any kind except for a few minutes or a few hours after a hard rain, and the lower proprietor has the right to embank or protect against the same, without incurring any liability, and owes no duty to the upper proprietor to drain such surface water over and across his land. Gross v. Lampasas, 74 Texas, 201; Lessard v. Stram, 51 Am. Rep., 715; 2 Ballard on Real Property, sec. 721; 2 Farnham on Waters, secs. 455, 455a, 457, and 2618; Cairo v. Brevoort, 25 L. R. A., 527; notes c, d and e.

It is the law that no person is liable for any damages except such as were caused by his own acts or the acts of those under his control, and for whose acts he is responsible, and merely because the one happens to know or even consent to or acquiesce in the acts of another, does not render the one liable for the acts of such other, over whom he has no control, and the charge placed too great a burden upon the defendant. Austin & N. W. Ry. Co. v. Anderson, 79 Texas, 435.

*W. G. Love, R. J. Channell* and *G. J. Kapner,* for appellee.—Where surface water is united to form a stream or natural drainage way, having a well defined bed and banks or sides, and discharging itself into a body of water, such stream ceases to be mere surface water,

and its flow can not be obstructed to the injury of adjacent owners without creating liability therefor. City of Dallas v Schultz, 27 S. W. Rep., 292; Booker v. McBride, 40 S. W. Rep., 1031; 3 Farnham on Waters and Water Rights, secs. 889, et seq.; 30 Am. & Eng. Encyc. of Law, 333 and 335; Los Angeles Cem. Assn. v. Los Angeles, 103 Cal., 461; 37 Pac. Rep., 375; Larrabee v. Cloverdale, 131 Cal., 96; 63 Pac. Rep., 143; McClure v. Red Wing, 28 Minn., 186; Beatrice v. Leary, 45 Neb., 149; 63 N. W. Rep., 370; Sanguinetti v. Pock, 136 Cal., 466; 89 Am. St. Rep., 168; Goldsmith v. Elsas, 53 Ga., 188; Edgar v. Walker, 106 Ga., 454; Gillham v. Madison County R. R. Co., 49 Ill., 484; 93 Am. Dec., 627; Ribordy v. Murray, 177 Ill., 134; Wharton v. Stevens, 84 Iowa, 107; 15 L. R. A., 630; Waverly v. Page, 105 Iowa, 225; 40 L. R. A., 465; Enright v. Hartsig, 46 Mich., 469; Jungblum v. Minneapolis, N. U. & S. W. Ry. Co., 70 Minn., 153; 72 N. W. Rep., 971; Palmer v. Waddell, 22 Kansas, 355; Gibbs v. Williams, 25 Kansas, 214; 37 Am. Rep., 241; Lincoln & B. H. Ry. Co. v. Sutherland, 44 Neb., 526; Earl v. DeHart, 12 New Jersey Eq., 280; Little Rock & Ft. S. Ry. Co. v. Chapman, 43 Am. Rep., 280.

PLEASANTS, Chief Justice.—This suit was brought by appellee against appellant to recover damages for the alleged wrongful obstruction of a watercourse whereby it is alleged the property of appellee was overflowed and injured to plaintiff's damage in the sum of $900. The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff for $100.

The evidence shows that appellee is the owner of lot No. 9 in block G of Frostown addition to the city of Houston, which is the center lot in said block. This block fronts on Pine Street, which runs north and south on the east side of said block. The defendant owns lots 8 and 7 in said block, adjoining lot 9 on the north, and also owns a tract of land east of and fronting on Pine Street opposite said block G, which tract is also subdivided into lots and is known as Moody's addition to said city. Each of said lots in block G have a front of 50 feet on Pine Street and extend back between parallel lines a distance of 100 feet. Lots 10 and 11 in said block are south of said lot 9 owned by plaintiff. Said block is bounded on the south by Race Street and on the north by Arch Street. Pine Street is a public thoroughfare of the city of Houston and is under the control of said city. The land for some distance to the south and west of plaintiff's lot slopes to the north and east and said lot and lot No. 8, owned by defendant, is the lowest portion of a basin which receives the surface water from a considerable part of surrounding territory, most of this water, however, comes from the south and west and flows over plaintiff's lot before it reaches lot No. 8. The outlet for the water collected in this basin was a channel cut by the action of the water and which began about the center of lot 8, near the line of plaintiff's lot, and ran east across Pine Street and across the adjoining property of defendant, known as Moody's addition, and into Buffalo bayou. This channel, or gully, was about a foot in depth and three or four feet wide at its head in said lot 8, and

about six feet deep and ten feet wide where it crossed Pine Street. East of Pine Street it is considerably deeper and wider, and prior to its obstruction, as hereafter described, it was the drainage for all of the surface water flowing over plaintiff's lot and also for that which came from lots 8 and 7 in block G and the lands immediately west thereof.

The suit was filed on July 29, 1904, and in the original petition the city of Houston was sued jointly with the appellant under allegations charging that the gully was obstructed by said city by filling it with garbage and trash with the consent and agreement of the appellant. After the first trial of the case, which was held in May, 1905, plaintiff filed an amended petition complaining only of appellant Settegast and dismissing his suit against the city.

Sometime in 1903 or 1904 the city of Houston improved Pine Street, and in making this improvement raised the grade of the street several feet higher than plaintiff's lot, and filled in the gully where it crossed the street. For the purpose of affording an outlet for the surface water which was thus accumulated, after every heavy rain, on the lots of plaintiff and defendant on the west side of the street, a wooden culvert was put in. This culvert is from a foot to eighteen inches square, but since the raising of the street by the city does not carry the water from the lots on the west side of the street. After raising the street and placing the culvert, the city, with the consent of appellant, began using the gully in the east of the street as a dumping place for garbage and trash, and as a result of such use the gully has been filled up for some distance east of the street.

L. W. Allen, a witness for plaintiff, testified that after a rain the water stands on the property of plaintiff on the west side of Pine Street, because the street is considerably higher than the lot. He further testified: "If there was a gully east of Pine Street now, and if Pine Street was left without an opening, the water could not run off. I do not know that the culvert ever caved in, but I know it is not operating. I don't know whether it caved in or rotted out, but I know it does not operate. It is out of sight and I know it does not carry the water off."

C. Anderson, witness for plaintiff, testified: "The city filled in Pine Street. The city put in scraps to fill up the gully. The city left a drain on top on a level with the street. The culvert was about a foot square. It was about six or seven feet on each side from the ends of the box drain to the edge of the street. The water did not run off of the Kapner lot as long as the box drain was kept open. It was too high up for the water to run off of the lot. The box drain was made too high. Water always stood on the back part of his lot. It would not stand as much in the front as it would in the back. If there were a gully open today east of Pine Street the water could not run off of Kapner's lot unless you had a culvert under the street. Today the street is the first thing that keeps the water from running off Kapner's lot, and the next thing it would get off if the gully was open."

S. Hildebrandt, witness for plaintiff, testified: "Kapner's lot

is subject to overflow on account of the city filling in on Settegast's lot and the street, too. When the city began to fill in, of course they moved the culvert up, and then the water backed in the Kapner lot."

This testimony is uncontradicted, and we think conclusively shows that the filling in of the gully on the east side of Pine Street was not the proximate cause of the overflow of appellee's property. Under this view of the evidence it is unnecessary to pass upon any of the assignments of error except those assailing the verdict on the ground that it is without any evidence to support it.

If, as shown by the evidence before set out, the city, by the improvement of Pine Street in the manner shown, prevented the water from the west side of said street from reaching the gully on the east side, the act of appellant in thereafter filling said gully, or permitting it to be filled by the city, could not have produced the damage complained of by plaintiff and therefore appellant can not be held liable for such damage.

Our conclusion being that under the undisputed evidence in this case the jury should have found a verdict for the defendant, the assignments complaining of the verdict on this ground are sustained and the judgment of the trial court is reversed and judgment here rendered for appellant.

*Reversed and rendered.*